UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
UNITED STATES OF AMERICA,

    -against-                 ORDER
                                No. 18-CR-0606 (JS)
TERRILL LATNEY,

          Defendant.

-------------------------------X

APPEARANCES

For Defendant:    Neil Bruce Checkman, Esq.
                  Law Office of Neil Checkman
                  115 Broadway, Suite 1704
                  New York, New York  10006

For United States: Michael R. Maffei, Esq.
                  United States Attorney's Office
                  Eastern District of New York
                  610 Federal Plaza
                  Central Islip, New York  11722


SEYBERT, District Judge:

        Currently before the Court is the counseled motion of Defendant Terrill Latney ("Defendant" or "Latney") seeking compassionate release in the form of a sentence reduction (hereafter, the "Motion"). (See Motion, ECF No. 319.)  He has supplemented his Motion several times, including modifying the basis for his request for compassion release.  (See ECF Nos. 367, 437, 460, 478, 519, 571, 582.)  The Government opposes Defendant's Motion, as well as his supplemental requests.  (See Opp'n, ECF No.

324; see also Sur-Reply, ECF No. 330; Cont'd Opp'n, ECF No. 583.)
For the following reasons, the Motion is **DENIED**.

<u>RELEVANT BACKGROUND</u>

I.  <u>Defendant's Underlying Conviction</u>

The Court assumes the parties' familiarity with Defendant's conviction. By way of general background: Defendant was an associate of the Red Stone Gorillas set of the Bloods, a gang which operated out of Riverhead, New York, and the surrounding area (hereafter, the "Gang"). (See Presentence Report ("PSR"), ECF No. 250 (sealed).) At the direction of Gang leader Jimmy Dean ("Dean"), Latney and others were on the lookout for a John Doe, known as "John Doe #1", to murder him in retaliation for John Doe #1 having shot at Dean. (See id. at 5.) Eventually, another Gang member shot at John Doe #1, who was not hit; the shooting resulted only in property damage. (See id.)

Thereafter, in early 2015, Latney was involved in another conspiracy to commit murder by Gang members, again at the directive of Dean. (See id. at 5-6; see also Opp'n at 4.) This time, the target was "John Doe #2", a person with whom Dean had a personal feud. (See id.) After John Doe #2 was located by Gang members, Dean informed Latney of Dean's intent to kill John Doe #2. (See id. at 6; see also Opp'n at 4.) Latney drove Dean and two other Gang members to the location where John Doe #2 was believed to be, and where Dean and the others opened fire upon a

vehicle they believed John Doe #2 occupied.  (See id.; see also Opp'n at 4.)  John Doe #2 was not in the car; rather, Thomas Lacolla was (hereafter, the "Victim").  (See id.; see also Opp'n at 4.)  Sustaining injuries from the shooting, the Victim died instantly at the scene.  (See id.; see also Opp'n at 4.)

In addition to being Dean's get-away driver, Defendant engaged in the distribution of controlled substances.  (See Opp'n at 3.)  After Dean's arrest, which created a void in the supply of heroin, crack cocaine and cocaine, Latney graduated from being a lower-level drug dealer to becoming a primary source of supply for several other Gang members.  (See PSR at 7; see also Opp'n at 3.)

On November 14, 2018, Defendant was arrested and arraigned on an indictment charging him with conspiring to distribute in excess of 280 grams cocaine base ("crack cocaine").  (See Arraignment Min. Entry, ECF No. 22; see also Indictment, ECF No. 1.)  Via an October 2019 superseding indictment, Latney was subsequently charged with, inter alia, racketeering, murder in-aid-of racketeering (or "VICAR murder"), and conspiring to distribute controlled substances.  (See Superseding Indictment, ECF Doc. No. 106; see also Arraignment Min. Entry, ECF No. 150.)  On February 7, 2020, Defendant pled guilty to Count I of the Superseding Indictment, which was a charge of racketeering, including as predicate acts, conspiring to distribute controlled substances (i.e., predicate act one) and the November 2015 murder

of the Victim (i.e., predicate act seven). (See Plea Minute Entry, ECF No. 190; see also Plea Hr'g Tr., ECF No. 199.) Defendant's plea was accepted by the Court on March 17, 2020. (See Order, ECF No. 204.)

On October 5, 2020, during the COVID-19 Pandemic, Defendant appeared before the Court for sentencing. During the sentencing hearing, defense counsel raised, inter alia, Defendant's comorbidities of obesity and hypertension, the conditions at the Metropolitan Detention Center ("MDC") where Defendant was being held, and the Pandemic as reasons for the Court to impose a term of 180 months' (i.e., 15 years') imprisonment upon Defendant. (See Opp'n at 2 (citing Sent'g Hr'g Tr. at 8, 11-13, & 35); see also, e.g., Def. Sent'g Memo, ECF No. 267, at 6 (re: obesity and hypertension), 9-11 (re: MDC conditions and Pandemic).) "[T]he Court acknowledged its review, inter alia, of the PSR, the Guidelines range . . . and the recommendation of Probation," and "specifically stated that it was accounting for the conditions at the MDC when imposing its sentence." (Id. (citing Sent'g Hr'g Tr. at 37-42).) It sentenced Defendant to 240 months' (i.e., 20 years) imprisonment and five years' supervised release, which was well-below the applicable Guidelines range of 360-months-to-life. (See Judgment, ECF No. 279; see also Sent'g Min. Entry, ECF No. 278; Statement of Reasons, ECF No. 280 (sealed), Sections III, IV.D, VI.A.) The Court stated the imposed

sentence, in addition to being below the Guidelines range, was "sufficient, but not greater than necessary, to comply with the purposes of § 3553(a)." (<u>See</u> Statement of Reasons, at Section VIII (capitalization removed).)

Defendant is currently 45-years-old and serving his sentence at the low security Federal Correctional Institute in Fort Dix, New Jersey; he has an anticipated release date of November 29, 2034. <u>See</u> Fed. Bureau of Prisons ("BOP"): Find an Inmate, Terrill Latney (BOP Reg. No. 91244-053), https://www.bop.gov/inmateloc/ (last visited Apr. 9, 2025) (identifying Defendant's location as "Fort Dix FCI").

II.  <u>Relevant Procedural History</u>

Six months after his sentencing, on April 8, 2021, Defendant moved for compassionate release. (<u>See</u> Motion.) His Motion was based upon the interrelationship between the COVID-19 Pandemic, conditions-of-confinement within BOP facilities, and his comorbidities of obesity and hypertension, which comorbidities, he argued, placed him at heightened risk of infection. (<u>See</u> <u>id.</u> at 2-5.)

On April 27, 2021, the Government lodged its Opposition. (<u>See</u> Opp'n.) It asserted the basis for Defendant's requested relief of a sentence of 15 years' imprisonment versus the 20 years' imprisonment imposed was nothing new; "[i]nstead, the [D]efendant reiterate[d] the exact same arguments he made in support of a

15-year sentence when the Court initially imposed sentence." (Id. at 2; see also id. at 2 n.1. ("In his sentencing submission, the [D]efendant raised his obesity, hypertension, the living conditions at the MDC[,] and the COVID-19 pandemic as reasons he should receive a sentence of 180 months' imprisonment. The instant [M]otion raises identical claims.").) Moreover, at that time, Defendant had refused the COVID-19 vaccination. (See id.)

Defendant filed a Reply (see ECF No. 325), to which the Government filed a Sur-Reply (see ECF No. 330), and, then, to which Defendant filed a Response (see ECF No. 332 (asserting Defendant "is simply arguing" for consideration that, since being incarcerated, Defendant "has served his time under circumstances that are far harsher than should be expected in a civilized society").) The Government also filed a letter in support of its Opposition, which was submitted "to inform the Court of the views of the family of the [V]ictim", i.e., the family believes Defendant "should serve the full 20-year sentence for taking [the Victim's] life." (Opp'n Support Ltr., ECF No. 327, at 1).

Over the years, Defendant has made supplemental filings in support of his Motion. First, on September 10, 2021, Defendant filed a letter seeking to add, as a basis for relief, "the effects of the onset of the Delta variant to the Covid-19 virus on incarcerated inmates." (Sept. 2021 Suppl., ECF No. 367, at 1.) In said letter, counsel also informed the Court Defendant received

the COVID-19 vaccine.  (See id.)  Second, on May 17, 2022, counsel filed a letter asking the Court to also consider, "since his initial arrest, Mr. Latney has incurred no disciplinary infractions at all", as well as "completed the [Residential Drug Abuse Program ("RDAP")] program, and has completed additional drug education classes."  (May 2022 Suppl., ECF No. 437, at 1.)  Third, on August 4, 2022, counsel filed a letter: confirming Latney remained discipline-infraction-free; reporting Latney had completed additional classes and was waiting to take others; reporting Latney was "assessed as having low recidivism risk level"; and, relying upon Concepcion v. United States, 597 U.S. 481 (2022), arguing a court may consider an inmate's rehabilitation in concert with other considerations.  (Aug. 2022 Suppl., ECF No. 460, at 1-2.)  Fourth, on December 26, 2022, counsel filed a letter updating the Court that Defendant: was designated a low security inmate; had earned 200 First Step Act ("FSA") Time Credits; was on a waitlist for seven additional FSA-related programs; and, "ha[d] incurred no disciplinary incidents in the last [six] months".  (Dec. 2022 Suppl., ECF No. 478, at 1.)  Counsel additionally reiterated Defendant's comorbidities, asserting they also "provide a cogent reason for the Court to grant his [Motion] for a modest reduction of his sentence."  (Id. at 2.)

Continuing, on August 2023, counsel filed a fifth letter in further support of Defendant's Motion, including many

attachments, to wit: Defendant's BOP FSA Time Credit Assessment
Report (as of July 2, 2023); Defendant's BOP Individualized Needs
Plan—Program Review (as of June 28, 2023); letters of support from
inmates Jeffrey Cohen, Diego Rodriguez, Eddie Wright; a letter of
support from Defendant's domestic partner and mother of his
children, Tanisha Jackson; and a joint letter of support from
family friends Leslie Harris and Venessa Booker.  (See Aug. 2023
Suppl., ECF No. 519.)  Counsel further offered United States v.
Quinones, No. 00-CR-0761, 2021 WL 797835 (S.D.N.Y. Feb. 27, 2021),
as persuasive authority for this Court's consideration.  (See id.
at 2.)  Additionally, counsel proffered, upon his release, Lateny
"would like to speak at schools in after-school programs to be a
voice against gangs and violence" and Latney "would abide by any
re-sentencing addition to a term of Supervised Release should the
Court deem that necessary."  (Id.)  In his sixth support letter,
filed August 16, 2024, Defendant's counsel reported Defendant
"continued to have a spotless disciplinary record over the past
six months, is classified as a low recidivism risk, and has paid
his special assessment", as well as "continues to participate in
qualified [FSA Time Credit] programming, and participates in an
assigned work detail."  (Aug. 2024 Suppl., ECF No. 571, at 1.)
Counsel also included Defendant's then-most recent BOP FSA Time
Credit Assessment Report (as of June 29, 2024), and BOP Summary
Reentry Plan—Progress Report (as of July 8, 2024).  (See id.)

Counsel once more advanced his position that "Latney's continued good conduct and sincere efforts toward his rehabilitation should be taken into account by the Court when deciding this [M]otion." (Id.)  Finally, in his <u>seventh</u> support letter, filed March 4, 2025, Defendant's counsel proffered a letter of contrition from Defendant, as well as a letter of support from John H. LoTurco, Esq., who volunteered his support of Latney, and a BOP Positive Decision Report on behalf of Defendant, approved by the Fort Dix FCI Chaplain.  (<u>See</u> Mar. 2025 Suppl., ECF No. 582.)  Further, counsel forwarded several letters in support of Defendant and his requested sentence reduction: five letters from family members to evince Defendant "will have strong family support upon his eventual release"; two letters from family friends; and, two letters from fellow inmates, who "have the advantage of seeing Mr. Latney on a daily basis."  (<u>Id.</u> at 2.)  Finally, with the March 2025 Supplement, counsel included additional certificates of completion for courses Defendant attended, to demonstrate "Latney continues to strive to improve himself and occupy his time at [Fort Dix FCI] productively."  (<u>Id.</u>)

On March 21, 2025, the Government filed a response to Defendant's March 2025 Supplement, continuing to voice its "opposition to the [D]efendant's motion for a reduction of his sentence."  (<u>See</u> Cont'd Opp'n at 1.)  It further underscored Defendant's shifting basis for seeking a sentence reduction, <u>i.e.</u>,

with the Pandemic having subsided, rendering this position vastly diminished, Defendant "shifted his reasoning for a reduction to focus on rehabilitation." (Id.)  While the Government acknowledges rehabilitation may be considered, it also reminds the Court that, by itself, rehabilitation is not an extraordinary and compelling reason to grant compassionate release.  (See id. at 2.)  In any event, rehabilitation is expected of a federal inmate.  (See id. (collecting cases).)  And, the BOP already has a mechanism to reward inmates for rehabilitative efforts – i.e., the FSA – from which, it appears, Defendant has already benefited with a one-year reduction in his sentence.  (See id.)  Given Defendant's earned credits, the Government argues granting this Motion would, essentially, award Defendant a windfall for what is already expected of him, thereby resulting in "a miscarriage of justice." (Id.)  Furthermore, the Government asserts where extraordinary and compelling reasons are demonstrated, a court must still consider the relevant Section 3553(a) Factors, which, in this case, weigh against granting compassionate release.  (See id.; see also id. at 3 ("To reduce Latney's sentence would be to compound tragedy.").) Therefore, the Government requests the Court's "original sentence of 20 years' imprisonment for murder and large-scale drug [d]ealing[, which] was carefully fashioned by the Court" be upheld and Defendant's Motion be denied.  (Id. at 3.)

The Motion is well-ripe for decision.

DISCUSSION

I.    Applicable Law

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020)).  The FSA, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A) (emphasis added); see also United States v. Thrower, 495 F. Supp. 3d 132, 137 (E.D.N.Y. 2020).  "The statute imposes three independent, necessary requirements for release: exhaustion of remedies, existence of an extraordinary and compelling reason for sentence reduction, and that the § 3553(a) [F]actors warrant reduction." United States v. Hunter, No. 21-1773, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (citing United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam)).  "A defendant's failure to exhaust administrative remedies is a threshold matter preventing the [c]ourt from considering a Section 3582 application[, i.e., a motion for

compassionate release].” <u>United States v. Robinson</u>, No. 10-CR-0789, 2022 WL 16924176, at *3 (E.D.N.Y. Nov. 14, 2022) (quoting <u>United States v. Alvarez</u>, No. 89-CR-0229, 2020 WL 4904586, at *2 (E.D.N.Y. Aug. 20, 2020)). And, “[i]f any one requirement is not satisfied, the district court may deny the motion without considering the remaining requirements.” <u>Hunter</u>, 2022 WL 2288688, at *1 (citing <u>Keitt</u>, 21 F.4th at 72-73); <u>see also, e.g.</u>, <u>United States v. Pimentel</u>, No. 23-7096-CR, 2025 WL 783730, *2 (2d Cir. Mar. 12, 2025) (summary order) (affirming district court’s denial of compassionate release where lower court’s denial was based solely on applying Section 3553(a) Factors, which it found did not warrant consideration of proffered extraordinary and compelling reasons; quoting <u>Keitt</u>).

Where exhaustion is satisfied, in their consideration of motions brought pursuant to the FSA, courts are not restricted to the Sentencing Commission’s applicable policy statements, but may consider “the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.” <u>United States v. Brooker</u>, 976 F.3d 228, 237 (2d Cir. 2020); <u>see also</u> <u>Keitt</u>, 21 F.4th at 71 (“A court deciding a compassionate release motion can consider ‘the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it].’” (alteration in original) (quoting <u>Brooker</u>, 976 F.3d at 237)). Indeed, “[t]he only statutory

limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" Brooker, 976 F.3d at 237-38 (emphasis and alteration in original) (quoting 28 U.S.C. § 994(t)); see also Ambrosio, 541 F. Supp. 3d at 254 (same).

Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) [F]actors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) [F]actors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (citation omitted); see also Pimentel, 2025 WL 783730, at *2; United States v. Jones, No. 22-2008-CR, 2023 WL 8613867, at *2 (2d Cir. Dec. 13, 2023) (same). "The defendant bears the burden of showing that the circumstances warrant a sentence reduction." United States v. Sellick, No. 21-2328, 2022 WL 16936829, at *1 (2d Cir. Nov. 15, 2022) (summary order) (citing United States v. Jones, 17 F.4th 371, 375 (2d Cir. 2021)); see also United States v. Friedlander, No. 20-CR-0441, 2022 WL 2305370, at *3 (E.D.N.Y. June 24, 2022) ("A defendant 'bears the burden of showing that his release is justified.'" (quoting United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020)).

II.  **Application**

    A. **Exhaustion**

        Defendant asserts he requested compassionate release from the warden of the Hazelton Federal Correctional Institution, the facility where he was housed when he moved for compassionate release. (See Motion at 1-2.) The warden denied Defendant's application. (See id. at 2.) Defendant asks this Court "to find that Mr. Latney has exhausted his administrative remedies." (Id.) Despite the lack of any evidence to support that claim and notwithstanding the Government's non-response, the Court proceeds "to consider the merits" of Defendant's Motion. See generally United States v. Saladino, 7 F.4th 120, 123 (2d Cir. 2021); see also United States v. Vasquez, No. 96-CR-1044, 2024 WL 2385264, *3 (E.D.N.Y. May 23, 2024) ("[B]ecause the Government has not raised an exhaustion defense, the Court finds that it has forfeited any such defense and the Court is 'free to consider the merits' of [defendant's compassionate release] motion" (quoting Saladino; collecting cases).

    B. **Defendant has Failed to Establish the Existence of Extraordinary and Compelling Circumstances**

        Defendant asks the Court to consider: (1) the threat the COVID-19 Pandemic poses to his health; (2) the harsher and more punitive nature of his incarceration due to the Pandemic; and (3) Defendant's rehabilitative efforts. (See generally Motion.) In

opposition, the Government arises dual arguments:[1] (a) "sentence reductions based on medical conditions . . . should be limited to extraordinary conditions that are terminal or severely limit an inmate's ability to function in a correctional setting" (Opp'n at 15 (collecting cases)), neither of which Defendant presents; and (b) in light of Defendant having "shifted his reasoning for a reduction to focus on rehabilitation" (Cont'd Opp'n at 1), "rehabilitation alone, especially in light of the [Section] 3553(a) [F]actors as applied to this case, is woefully insufficient to grant . . . any reduction of sentence." (Id. at 1-2.)

        As to Defendant's Comorbidities: The medical conditions of which Defendant complains fail to rise to the level that would warrant compassionate release. See, e.g., United States v. Gerald, No. 13-CR-0141, 2024 WL 4694004, at *6 (E.D.N.Y. Nov. 6, 2024) (denying compassionate release where "there is no indication Defendant's hypertension and other identified medical conditions are not well-controlled with medication and necessary medical care provided by [the federal correctional facility]" and there is nothing "in the record showing Defendant is not fully ambulatory and engaging in all normal activities of daily living"); see also United States v. Yong, No. 95-CR-0825, 2024 WL 3648259, at *6

---

[1]  After the Government filed its initial Opposition, Defendant was vaccinated against the COVID virus; therefore, the Court declines to address the Government's initial arguments based upon Defendant's prior non-vaccine status.

(E.D.N.Y. (Aug. 5, 2024) (denying compassionate release where record presented no reason to conclude defendant's hypertension was not being properly addressed by the BOP) (collecting cases). Indeed, upon the record presented, Defendant has failed to show his medical conditions "so incapacitate[d] him as to warrant a reduction of his sentence." United States v. Lisi, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020) ("BOP's guidance, read in conjunction with the Application Notes to § 1B1.13 [of the U.S. Sentencing Guidelines], indicate that a defendant's medical condition must be one of substantial severity and irremediability, and [defendant] has not shown that he suffers from such conditions."); see also United States v. Delacruz Santana, No. 16-CR-0337, 2024 WL 4449443, at *6 (E.D.N.Y. Oct. 2, 2024) (denying compassionate release where defendant "d[id] not indicate that his ability to provide self-care at FCI Fort Dix ha[d] been substantially diminished by his illnesses" and stating, "[w]here such evidence is lacking, courts within the Second Circuit have routinely denied compassionate release motions" (collecting cases)); United States v. Brown, No. 12-CR-0120, 2024 WL 1639926, at *2 (E.D.N.Y. Apr. 16, 2024) (denying compassionate release where defendant "d[id] not allege that his health conditions—hypertension, high cholesterol, and unspecified 'other conditions'—[we]re terminal, diminish[ed] his ability to provide self-care, or require[d] long-term or specialized care that [wa]s not being provided at" the federal

correctional facility where he was housed); United States v. Mohammed, Nos. 18-CR-0509, 20-CR-0581, 2024 WL 2701639, at *2-3 (E.D.N.Y. May 18, 2024) (denying compassionate release where defendant failed to meet the U.S.S.G. § 1B1.13(b)(1), i.e., "Medical Circumstances", criteria); see also United States v. Lake, No. 14-CR-0264, 2023 WL 8810620, at *4 (E.D.N.Y. Dec. 20, 2023) ("[C]ourts have found that high blood pressure is not an extraordinary and compelling reason for an inmate's release.") (quoting United States v. Jones, No. 02-CR-0778, 2020 WL 7640944, at *3 (E.D. Pa. Dec. 23, 2020) (collecting cases)). Therefore, this avenue for relief which Defendant pursues is unavailing.

As to COVID-19 Concerns: Regarding Defendant's concerns premised upon COVID-19, he has not articulated any basis upon which to distinguish himself from the general prison population. Indeed, since the beginning of the Pandemic, courts have denied motions for compassionate release where defendants have sought relief based upon generalized fears of COVID-19. See, e.g., United States v. Dekattu, No. 18-CR-0474, WL 7711842, *2 (E.D.N.Y. Dec. 29, 2020) (denying motion for compassionate release where defendant did not present extraordinary and compelling reasons unique to himself to merit release during COVID-19 outbreak at BOP facility) (collecting cases); United States v. Gioeli, No. 08-CR-0240, 2020 WL 2572191, at *4 (E.D.N.Y. May 21, 2020) ("I cannot find that the danger defendant faces from the mere threat of exposure to COVID-19

constitutes an extraordinary and compelling reason for granting compassionate release."); United States v. Davis, No. 14-CR-0296, 2020 WL 5628041, at *3 (S.D.N.Y. Sept. 21, 2020) (observing "mere existence of COVID-19 either in a prison facility or in society generally is not enough to satisfy the 'extraordinary and compelling reasons' requirement of 18 U.S.C. § 3582(c)(1)(A)") (collecting cases).

Post-COVID, it is well-established that "generalized fear of contracting COVID-19 is insufficient to meet the demanding standard of 'extraordinary and compelling' reasons in light of stabilized conditions at" BOP facilities. United States v. Gonzales, No. 15-CR-6085, 2023 WL 6386139, at *3 (W.D.N.Y. Oct. 2, 2023) (collecting cases). In that vein, as this Court recently stated: "[I]n considering the COVID-19 situation at [a federal correctional facility], one must recognize that the COVID-19 Public Health Emergency ended on May 11, 2023." United States v. Wagner, No. 17-CR-0106, 2024 WL 2801981, at *5 (E.D.N.Y. May 31, 2024) (citing U.S. Dep't Health & Human Servs., Fact Sheet: End of the COVID-19 Public Health Emergency, available at https://hhs.gov/about/news/2023/05/09/fact-sheet-end-of-the-covid-19-public-health-emergency.html); see also, e.g., Delacruz Santana, 2024 WL 4449443, at *6 ("Furthermore, COVID-19 is no longer considered an ongoing public health emergency by the federal government." (citation omitted)). "Therefore, it is no longer

necessary for the BOP to engage in across-the-board special operations."[2]  Id.  At bottom, more than "three years into the pandemic, 'the Court finds that the risks that were heightened at the onset of the pandemic have largely been reduced or been under control . . . .'"  Gonzales, 2023 WL 6386139, at *3 (quoting United States v. Malloy, No. 07-CR-0898, 2023 WL 2237504, at *4 (S.D.N.Y. Feb. 27, 2023)).  Therefore, "there is no current issue making compassionate release appropriate here."  Id. (citation omitted); see also United States v. Martinez, No. 03-CR-1049, 2022 WL 3019833, at *3 (E.D.N.Y. July 29, 2022) ("[G]eneralized COVID-19 concerns are not regarded as extraordinary and compelling reasons for compassionate release." (citations omitted)).  Further, to the extent Defendant raises concerns regarding COVID-19 variants, "such variants are 'considered less severe in causing illness and death.'"  United States v. Brown, No. 18-CR-0604, 2024 WL 4790165, at *4 (E.D.N.Y. Nov. 14, 2024) (quoting Mayes v. United States, No. 12-CR-0385, 2023 WL 22632, at *4 (E.D.N.Y. Jan. 3, 2023)).

Relatedly, as to Alleged Undue Harshness of Confinement: To the extent Defendant argues his incarceration has been harsher

---

[2]  In Wagner, the Court presumed the BOP had returned to operating its federal correctional facilities "without COVID-19-related precautions", which rendered the inmate-defendant's COVID-19-related argument "of little weight."  Wagner, 2024 WL 2801981, at *5 (citing Jones, 17 F.4th at 375 (confinement in facility "where [COVID-19] counts are currently low" was not "extraordinary and compelling" circumstance)).

than intended as a result of conditions imposed to address COVID-19 concerns, "[u]ndoubtedly, 'a day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison.'" United States v. Johnson, 671 F. Supp. 3d 265, 281 (E.D.N.Y. 2023) (quoting United States v. Mcrae, No. 17-CR-0643, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021)). Consequently, "particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic," courts have been willing to conclude that "pandemic-induced conditions of confinement can constitute extraordinary and compelling circumstances warranting compassionate release." Id. (quoting United States v. Oquendo, No. 13-CR-0357, 2023 WL 199609, at *5 (S.D.N.Y. Jan. 17, 2023), and collecting cases) (emphasis added); see also United States v. Russo, 643 F. Supp. 3d 325, 333 (E.D.N.Y. 2022) ("In addition to the health risks posed by the pandemic, the restrictions at [federal correctional facilities] during the pandemic have made [defendants'] incarceration[s] much more punitive than originally contemplated at the time of sentencing[s]." (citing United States v. Rodriquez, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020)).

        Yet, Defendant's claims that the Pandemic has made his incarceration more punitive than anticipated are unavailing since "these hardships do not set [him] apart from the rest of the BOP

inmate population and therefore do not, alone, constitute extraordinary and compelling reasons for his release.'" United States v. Johnson, No. 98-CR-0860, 2021 WL 1207314, at *4 (E.D.N.Y. Mar. 31, 2021)); see also, e.g., United States v. Veliu, No. 17-CR-0404, 2022 WL 2484240, at *5 (E.D.N.Y. July 6, 2022) ("[T]he conditions of confinement during the pandemic [do not] give rise to extraordinary and compelling circumstances. Although the Court acknowledges that 'the pandemic has made prison conditions harsher than usual, those are circumstances that all inmates have had to endure. While the Court does not minimize those difficulties, they do not rise to the level of extraordinary and compelling.'") (quoting United States v. Johnson, No. 18-CR-0907, 2021 WL 4120536, at *3 (S.D.N.Y. Sept. 9, 2021)); United States v. Pinto-Thomaz, 454 F. Supp. 3d 327, 329 (S.D.N.Y., 2020) (observing "it is hard to see how" the BOP's implementation of various protocols in attempting to contain the spread of COVID-19 "ma[d]e the situations of [defendants] 'extraordinary' in terms of the statutory requirement, for in these respects [the defendants] are no different from a host of other prisoners"). Standing alone, the harshness of conditions Defendant faced during the Pandemic were the same as those endured by his fellow inmates; in that sense, they were not extraordinary. See, e.g., Martinez, 2022 WL 3019833, at *3. Nor, given the record, is this a case where, considering several circumstances in totality, the harshness factor should

weigh in favor of finding an extraordinary and compelling reason for granting compassionate release. Compare United States v. Amerson, No. 05-CR-0301, 2023 WL 4497767, at *6 (E.D.N.Y. July 12, 2023) (finding where, among other considered circumstances, defendant had served more than 18 years of a 32-year sentence, and suffered serious health conditions, including type II diabetes which was worsening and proving difficult for defendant to manage with necessary self-care, "the harshness of COVID-related restrictions weigh[ed] in favor of a sentence reduction even if they d[id] not independently constitute an extraordinary and compelling reason to grant compassionate release" (emphasis added)). In any event, at the time of Defendant's sentencing, which was during the Pandemic, the Court had considered the harshness factor in fashioning its 10-years-below the recommended Guidelines sentence of 30 years' imprisonment. (See, e.g., Sent'g Hr'g Tr. at 11-13, 40.)

As to Defendant's Rehabilitative Efforts: The Court begins by reiterating that, notwithstanding its broad discretion in considering "all possible reasons for compassionate release," "rehabilitation alone shall not be considered an extraordinary and compelling reason." Brooker, 976 F.3d at 237-38 (citing 28 U.S.C. § 944(t) (cleaned up)). Moreover, "[w]hat constitutes rehabilitation is left to the [c]ourt's discretion, but courts in this district have considered the following factors: [1] the

defendant's 'maintenance of familial and societal relationships; [2] letters of support both from community members and prison staff; [3] conduct and disciplinary records while incarcerated; . . . [4] any achievements and education obtained while incarcerated; . . . [5] gains in maturity[;] and [6] other clear signs that a defendant's incarceration has had rehabilitative value'." United States v. Vasquez, No. 96-CR-1044, 2024 WL 2385264, at *5 (E.D.N.Y. May 23, 2024) (quoting United States v. Byam, No. 12-CR-0586, 2024 WL 1556741, at *8 (E.D.N.Y. Apr. 10, 2024)) (emphasis added); see also, e.g., United States v. Qadar, No. 00-CR-0603, 2021 WL 3087956, at *10 (E.D.N.Y. July 22, 2021) (same). "At minimum, 'rehabilitation requires the court to examine whether a defendant has taken responsibility for his . . . actions and acted to reintegrate [him]self into a productive society.'" Byam, 2024 WL 1556741, at *7 (quoting United States v. Blake, 89 F. Supp. 2d 328, 346 (E.D.N.Y. 2000)).

Here, based upon his supplemental submissions, Defendant shows significant strides in his rehabilitation. See Byam, 2024 WL 1556741, at *8 ("Both subjectively and objectively, [defendant] has demonstrated significant progress under the indicia of rehabilitation."). First, demonstrating he has maintained familial relationships, Defendant has provided letters from his domestic partner and mother of his children, as well as a letter from his own mother. Defendant's domestic partner states, inter

alia, Defendant: has changed for the better; expresses remorse for his past actions and mistakes: has "found a relationship with God"; quotes Biblical verses to Ms. Jackson and their children, as a source of encouragement; maintains relationships with his four children; has been and is well-regarded by staff of the various facilities where he has been housed; and, plans to be a productive community member and hopes to mentor young people once released. (See K. Jackson Ltrs., ECF No. 519 at ECF p.7, and ECF No. 582 at ECF p.9.)  Defendant's mother, Donna Latney, writes, among other things: her son has consistently "expresses his remorse for his involvement in the crime that was committed"; once released, Defendant wishes to be "a vocal voice to his community"; and, she and Defendant's father are supportive of Defendant. (See D. Latney Ltr., ECF No. 582 at ECF p.8.)  Relatedly, Defendant has provided letters of support from other family, i.e., Latney's cousins: Tameca Wilkinson (see ECF No. 582 at ECF p.10); Shantay West (see id. at ECF p.11); and Leslie Harris (see id. at ECF p.12; see also ECF No. 519 at ECF p.8-10), and friends, i.e., Donald McIntosh (see id. at ECF p.13), and Venessa Brooker (see id. at ECF pp.14-15; see also ECF No. 519 at ECF pp.8-10).  Letters from both his cousins and friends demonstrate:  Defendant enjoys the support of his family and friends; Defendant has expressed his remorse for his criminal conduct; they believe Defendant has learned from his mistakes; Defendant has shared his continued desire to contribute

to his community and provide mentorship; Defendant strives to be a positive influence on others; and, Defendant plans to relocate to North Carlina with his family for a fresh beginning.

Second, Defendant has provided a Positive Decision Report (hereafter, the "Report") from the prison chaplain (see Report, ECF No, 582 at ECF p.7), as well as letters of support from a community member (see LoTurco Ltr., ECF No. 582 at ECF pp.5-6), and fellow inmates (see, e.g., J. Cohen Ltr., ECF No. 519 at ECF p.3; J. Joiles Ltr., ECF No. 582 at ECF p.18 ECF No.; D. Rodriguez Ltr., ECF No. 519 at ECF pp. 5-6; and E. White Ltrs., ECF No. 519 at ECF p.4, and ECF No. 582 at ECF pp.16-17 (hereafter, collectively, the "Inmates Letters")). The Report and these letters echo the sentiments expressed by Defendant's family and friends. In the Report, the facility chaplain states, inter alia, Defendant: maintains a positive attitude; is willing to help others in need; has remained discipline free since being incarcerated; has exemplified growth and maturity; and, expresses remorse for his actions leading to his incarceration. In the same vein, in addition to acknowledging Defendant's deep remorse for his past actions and taking full responsibility for his choices, Attorney LoTurco's letter underscores Defendant's consistent positive attitude and love and concern for his family, friends, and community, stating Defendant "is determined to earn back the respect of those around him and make meaningful contributions to

society" and hopes, post-incarceration "to be a youth mentor so that troubled teens will not follow his path." (LoTurco Ltr. at ECF pp.5-6.) The messages in Defendant's fellow Inmates Letters are similarly glowing, reiterating the theme that Defendant: is remorseful and accepts responsibility for his actions; is a positive person who is focused on helping others; and, wishes to mentor young people, post-incarceration, to help prevent them making the mistakes he has. (See Inmates Letters.) Moreover, Defendant has completed multiple courses or programs while incarcerated and is continuing to take more. (See, e.g., Mar. 2025 Suppl. at 2; see also, e.g., Aug. 2024 Suppl.; Aug. 2023 Suppl.)

Finally, the Court considers Defendant's January 2025 letter of contrition (hereafter, the "Contrition Letter"). (See ECF No. 582 at ECF pp.3-4.) In beginning his Contrition Letter, Defendant expresses his "tremendous regret for the loss and pain [he] helped inflict upon the LaColla and Walker families" and his wish that the wounds he caused become "easier to bear and that new love comes into their lives to fill the void [Defendant] helped cause." (Id. at ECF p.3.) Defendant also states his acceptance of responsibility and that he is "actively working to make [him]self a better person." (Id.) In working on that goal, Defendant asserts growing in this new direction has "start[ed] with a respect for rules and the law," as exemplified by not

incurring any disciplinary infractions.    (See id. at ECF p.4.) Defendant proffers his future plan of "becoming a beacon of hope to young people, not just some cautionary tale," with his goal being "to work with at-risk youth . . . to share [his] story and help others choose a better path through life", thereby letting his "mistakes guide them away from the kinds of choices [Defendant] made so they can break the cycle that traps so many . . . ." (Id.) Defendant asks the Court take into consideration his rehabilitation as a factor when deciding the instant Motion. (See id.) The Court has done so; regrettably, Defendant's commendable rehabilitation is not enough.

>    As the Government persuasively argues:
>
>    [S]ince rehabilitation and "model prison conduct is expected" of federal inmates, the [D]efendant should not be granted compassionate release on this basis. United States v. Veliu, No. 17-CR-0404, 2022 WL 2484240, at *5 (E.D.N.Y. July 6, 2022); see also United States v. Reyes, No. 20-3285, 2022 WL 1669388, at *1 (2d Cir. May 26, 2022) (summary order) (affirming compassionate release denial where district court "acknowledged [the defendant's] efforts toward rehabilitation, [but] nevertheless found that the [S]ection 3553(a) [F]actors weighed heavily against a sentence reduction" based on the defendant's conduct); United States v. Garcia, No. 19-CR-210 (CS), 2022 WL 672758, at *2 (S.D.N.Y. Mar. 7, 2022) ("Maintaining good conduct in prison is not uncommon, and indeed is expected.").

(Cont'd Opp'n at 2.)  The Court cannot disagree.

Moreover, inapposite to the <u>Byam</u> case wherein rehabilitation was one of several factors that persuaded the court to "find[] the totality of the circumstances presented amount[ed] to 'extraordinary and compelling' reasons to reduce [defendant's] sentence," 2024 WL 1556741, at *9, here, the only factor Latney is able to demonstrate as within the purview of being "extraordinary and compelling" is his rehabilitative efforts. However, laudable as those efforts are -- and, the Court finds Latney's efforts are laudable in this instance -- it is also well-settled that the Court may not make an "extraordinary and compelling" finding based solely upon a defendant's rehabilitation. <u>See</u> <u>Brooker</u>, 976 F.3d at 237-38 ("The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . <u>alone</u> shall not be considered an extraordinary and compelling reason.'" (citing 28 U.S.C. § 994(t); emphasis added in <u>Brooker</u>); <u>cf.</u>, <u>e.g.</u>, <u>United States v. Russo</u>, 643 F. Supp. 3d 325, 332 ("[R]ehabiliation alone would not suffice as extraordinary and compelling, but it weighs in [defendant's] favor alongside consideration of multiple other factors."). Thus, because the Court finds Defendant's other proffered reasons for granting his Motion are neither extraordinary nor compelling, the weight his rehabilitation efforts might have added to the Court's calculus of the totality

of the circumstances is without effect; hence, there is no ground to reduce Defendant's sentence.[3]

    C.    <u>The Section 3553(a) Factors</u>

"[A] district court may deny a motion for compassionate release in 'sole reliance' on the Section 3553(a) [F]actors, without determining 'whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction.'" <u>Jones</u>, 2023 WL 8613867, at *2; <u>see also Jones</u>, 17 F.4th at 374 ("[A] district court's 'reasonable evaluation of the Section 3553(a) [F]actors' is 'an alternative and independent basis for denial of compassionate release.'" (quoting <u>United States v. Robinson</u>, 848 F. App'x 477, 478 (2d Cir. 2021)).

> The [Section 3553(a) F]actors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and "to

---

[3] Nonetheless, such rehabilitative efforts are not without reward; because of his rehabilitative efforts, Defendant has earned FSA Time Credits which have accelerated his release date by a year. (<u>See</u> Cont'd Opp'n at 2.) Defendant is urged to continue pursuing all available rehabilitation opportunities and fully utilize the BOP Time Credits programs and activities in order to achieve further early release, if available to him. Similarly, as it appears he has been doing, Defendant is encouraged to mentor younger inmates while he remains incarcerated, especially by way of his example in maintaining a blemish-free disciplinary record.

> provide the defendant with needed educational
> or vocational training, medical care, or other
> correctional treatment in the most effective
> manner."  18 U.S.C. § 3553(a)(1)-(2).

United States v. Johnson, 671 F. Supp. 3d 265, 283 (E.D.N.Y. 2023).

Addressing the Section 3553(a) Factors, Defendant maintains that a reduced sentence of incarceration, from 20 years to 15 years, will continue to "reflect the seriousness of his offenses, promote respect for the law, and provide a just punishment," given the harsh conditions he has endured while at MDC and during the Pandemic.  (Motion at 5.)  Moreover, Defendant contends, even with the proposed reduced sentence, the public will remain protected since Defendant will be more than 50-years-old upon release and will be subjected to a further five years of supervised release.  (See id.)  Additionally, Defendant baldly contends a reduced sentence, to 15 years, "would both specifically and generally deter [him] and others from participating in such crimes, just as much as the initial sentence imposed."  (Id.; see also, e.g., Reply at 2 ("[A]ll the [Section] 3553[(a)] [F]actors can be satisfied by a reduction of [Defendant's] sentence to 15 years from 20 years.  Such a reduction would not make the community more dangerous, nor would it promote disrespect for the law.").)

In arguing the Section 3553(a) Factors presented in this case weigh extremely heavily against a sentence reduction, the Government advances several arguments.  As to the nature and

circumstances of the offense:  The Government states, "Not only was [Defendant] convicted of murder and narcotics trafficking, but . . . [D]efendant's commission of both of those offenses was, in part, to advance the affairs of a criminal enterprise, the Bloods street gang."  (Opp'n at 16.)  Regarding the murder of the Victim, the Government more specifically contends it "was not a random drive-by shooting or spur of the moment, crime of opportunity", but "the result of a targeted hit directed at John Doe #2 by a violent street gang, a killing in which [Defendant] participated in knowingly, readily and willingly."  (Id.; see also, e.g., Sur-Reply at 3 ("Not once . . . does [D]efendant mention the fact that his racketeering conviction is predicated, inter alia, upon a murder.").)  Regarding the narcotics trafficking, the Government asserts Defendant "participated in a conspiracy to distribute large quantities of highly addictive narcotics, specifically, over a kilogram of heroin, over 280 grams of crack cocaine and over five kilograms of cocaine", which "type of narcotics distribution is extremely serious."  (Id.)

As to the history and characteristics of Defendant:  The Government maintains, because Defendant "is an individual that chooses to break the law over and over and over again", e.g., having "three narcotics related felony convictions (one which involved the possession of a firearm)", as well as continued to associate with violent criminals and the Gang while on New York

State parole supervision, Defendant "chose to participate in a murder." (Id. at 17.} The Government characterizes Defendant as a career criminal who "ha[d] never truly attempted to rehabilitate himself in the past" and who did not have a "legitimate source[] of income, because he had illegitimate, criminal income." (Id.) Given same, the Government argues it would be inappropriate to grant Defendant a sentence reduction. (See id.)

Continuing, as to the seriousness of Defendant's offenses: The Government maintains Defendant's willful actions caused the murder of the Victim--who was mistaken to be another-- and placed large quantities of illegal narcotics into Suffolk County communities, both of which were damaging to those communities. (See id.; see also, e.g., Sur-Reply ("[D]efendant would like the Court to overlook the fact . . . [D]efendant knowingly and willing[ly] participated in a planned, targeted violent homicide that claimed the life of an unintended target.").) Further, it summarily argues the promotion of respect for the law weighs against a sentence reduction in this instance. (See id.)

As to consideration of what is just punishment: The Government puts forth that the 20-year incarceration sentence is just given Defendant's "willing participation in the taking of a human life". (Id.) It elucidates, stating Defendant's "crimes are so severe that the statutory maximum term available is life imprisonment" (id.), with "[t]he low end of the applicable

Guidelines range [being] 360 months' imprisonment." (Id. at 18.) The Government argues the Court's imposition of its below-Guidelines 20-year' imprisonment sentence "was what the Court considered just punishment in light of all of the facts and circumstances, which [facts and circumstances] remain unchanged at this time," thereby warranting said sentence also remain unchanged now. (Id.)

    As to considering the deterrence: In addition to the Court's 20-year imprisonment sentence specifically deterring Defendant from future crime, the Government insists said sentence is also necessary as a general deterrence against violent gang crime. (See id.) That is, "individuals who chose to take human life in the name of a criminal enterprise will be dealt with harshly and punished with the [available] substantial criminal sanctions." (Id.) Accordingly, the Government avers, as the Court's original sentence was fashioned to instill both specific and general deterrence, which it did, Defendant's sentence "should remain unchanged." (Id.)

    As to consideration of the kind of sentences available: The Government underscores, "**both** of the predicate acts committed" by Defendant—murder in violation of state law and conspiracy to distribute controlled substances in violation of federal law—"are punishable by life imprisonment," i.e., lengthy prison terms. (Id. (emphases in original).) Yet, by receiving a sentence of "20

years' imprisonment for two separate crimes punishable by life," the Government implies Defendant has already benefited from the Court's leniency, thereby making further leniency unwarranted. (Id.; see also Cont'd Opp'n at 3 ("The [D]efendant was a willing participant in an extremely violent murder in which the [V]ictim was shot over thirty times.  To reduce Latney's sentence would be to compound tragedy.").)

Finally, as to consideration of the Guidelines and the need to avoid unwarranted disparities:  The Government reminds the Court that since Defendant has already received a significant below-Guidelines sentence, i.e., ten years less than the recommended low-end range of 360 months' imprisonment, consideration of the Guidelines weighs against granting any further reduction.  (See id.)  And, similarly, as to the need to avoid sentencing disparities, when fashioning its below-Guidelines sentence, "the Court considered the [D]efendant's request for a 15-year sentence and rejected it."  (Id. at 19.)  Hence, to consider the same request now "would only further exacerbate the risk [of] unwarranted disparities between the [D]efendant and others who engaged in the same criminal conduct."  (Id.)

The Court finds the Government's Section 3553(a) Factors arguments compelling.  Little before the Court changes its original analysis of those Factors.  Indeed, the arguments Defendant puts forth in support of his Motion reverberate those presented in his

Sentencing Memorandum, which this Court already considered and rejected. (Compare Def. Sent'g Memo, with Sent'g Hr'g Tr. at 5-6, 37-40.)  They were not enough to persuade the Court at sentencing, and they are not enough to persuade the Court now. Instead, the Court's original consideration of the relevant Section 3553(a) Factors continue to carry substantial weight:

> In terms of a sentence, looking at his background, the seriousness of the crime, and it is a particularly serious crime, I look at any opportunity for his rehabilitation. And 15 years, frankly, is too little. 360 months is too much. I think that the Probation Department's recommendation is a fair one. 20 years is a long sentence. But frankly, sir, when you had the opportunity to make your choices, you made them. You didn't make them once, you made them twice. You knew what was going on. Life isn't fair sometimes, but it's particularly unfair when you're dealing drugs for at least a decade. You do have a prior [conviction for] gun possession with the drugs and that should have given you pause to back off and stay away from the very people that you went out with to go and hunt another human being.

(Sent'g Hr'g Tr. at 40-41.)  Indeed, even recognizing Defendant has been assigned a low recidivism rate and that a reduced sentence of 15-years' imprisonment may deter Defendant from committing further crimes, consideration of those two Factors is not enough to outweigh the remaining relevant Section 3553(a) Factors in this instance. Rather, the Court's below-Guidelines, 20-years sentence of imprisonment continues to be appropriate to, inter alia: promote respect for the law; reflect the seriousness of the offense;

provide just punishment; and, at least in a general manner, adequately deter criminal conduct, thereby satisfying the applicable Section 3553(a) Factors. (Cf. Statement of Reasons, Part VIII (stating a sentence of 240 months' imprisonment sufficient, but not greater than necessary, to meet the goals of Section 3553(a)).) Hence, even if Defendant were able to show extraordinary and compelling circumstances warranting a reduced sentence, which he has not, consideration of the relevant Section 3553(a) Factors would override those circumstances and warrant the denial of Defendant's requested sentence reduction.

CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Compassionate Release Motion (ECF No. 319) is **DENIED** in its entirety without prejudice.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: April 16, 2025
       Central Islip, New York